IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEAN JOCELYN MERILIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-074 |
| | ) | |
| BRANDON HARNER, SGT. (TSP); | ) | |
| MS. DENISHA FOSTER, DWS (TSP); | ) | |
| ANDREW MCFARLANE, Head Warden; | ) | |
| CRYSTAL L. MOON, Director State Board | ) | |
| of Pardons and Paroles Clemency Division; | ) | |
| PAROLE BOARD 5 MEMBERS, | ) | |
| | ) | |
| Defendants.[1] | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and has paid the $405.00 filing fee. However, notwithstanding any filing fee, the complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A(b); <u>Al-Amin v. Donald</u>, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

---

[1] The Court **DIRECTS** the **CLERK** to update the docket in accordance with the above caption, which is consistent with Plaintiff's complaint. (Doc. no. 1, pp. 1, 6.) In particular, Plaintiff refers to Defendant Moon's title as the "Director of the State Board of Pardons" and alternatively as "Director Clemency Division[.]" (<u>Id.</u> at 1, 6.) He also names "Parole Board 5 Members" as separate defendants, sued individually and in their official capacities. (<u>Id.</u> at 6.) In an abundance of caution, the Court interprets this last phrase to mean the five member panel of the Georgia Board of Pardons and Paroles.

I.  **SCREENING THE COMPLAINT**

A.  **BACKGROUND**

In his complaint, Plaintiff names the following Defendants in their individual and official capacities: (1) Brandon Harner, Sgt. (TSP); (2) Ms. Denisha Foster, DWS (TSP); (3) Andrew McFarlane, Head Warden; (4) Crystal L. Moon, Director, State Board of Pardons and Paroles, Clemency Division; and (5) Parole Board 5 Members (hereinafter "Parole Board"). (Doc. no. 1, pp. 1, 6.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On May 19, 2006, Plaintiff was convicted on two counts of malice murder and one count of possession of a firearm by a convicted felon and was sentenced to two consecutive life sentences. (Id. at 1.) Plaintiff filed an application for "commutation" of his sentence with Defendant Parole Board in June 2017. (Id. at 7.) With his application, Plaintiff submitted phone records and affidavits from his mother, sister, and arresting officer, Detective Brower, which showed Plaintiff was "actually innocen[t]" of the crimes for which he was convicted. (Id. at 8-9.) Plaintiff also submitted proof of business assets and an immigration detainer to show Defendant Parole Board "he could take[] care of himself as self[-]employe[d]" and he would not be a threat to public safety if they granted his parole. (Id. at 8, 10-11.)

Seven years later, on November 19, 2024, Defendants Crystal L. Moon and Parole Board denied Plaintiff's request without providing him a hearing or considering his application and the attached materials. (Id. at 9.) Defendant Parole Board denied his request in retaliation for filing previous lawsuits against the prison and parole board, as well as because of his race and nationality. (Id. at 18-19, 23.) Plaintiff filed a timely request for reconsideration on December 2, 2024, which has gone unanswered. (Id. at 10.) After submission of his complaint,

2

Plaintiff filed a "Motion to Add Claims" against Defendant Moon and a notice titled "Violation of the Parole Board," both claiming the Parole Board's November 19th decision is void because only three members participated. (Doc. nos. 4, 5.)

Plaintiff's complaint also alleges constitutional violations in connection with a December 2024 disciplinary report. (Doc. no. 1, pp. 24-29.) On December 23, 2024, disciplinary reports were filed against Plaintiff and inmate Derrick Sallette based on in-prison drug tests. (Id. at 25-26.) While inmate Sallette failed his drug test due to "marijuana in his system[,]" Plaintiff's own sample was rejected for testing based on a procedural error; despite him being willing to provide another sample, Plaintiff was not given the opportunity. (Id. at 24-25.) Defendant Harner submitted a false disciplinary report accusing Plaintiff of refusing to take the drug test, which will prejudice future parole boards. (Id. at 25-26, 28-29.) Defendants McFarlane and Foster ultimately levied sanctions against Plaintiff, but not inmate Sallette, on that same day. (Id. at 25-26, 28-29.) This disparate treatment was on account of race and nationality. (Id. at 29.) Based on the foregoing, Plaintiff requests declaratory, injunctive, and monetary relief. (Id. at 34-35.)

B.  DISCUSSION

1.  **Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Failure to state a claim under § 1915A(b) is "no different from a dismissal under Federal Rule of Civil Procedure 12(b)(6)." White v. Lemma, 947 F.3d 1373, 1377 (11th Cir.

3

2020) (*per curiam*) (citing Jones v. Bock, 549 U.S. 199, 215-16 (2007)), *abrogated on other grounds by* Wells v. Brown, 58 F.4th 1347 (11th Cir. 2023).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the amended complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim Against Defendant Parole Board Because This Defendant Is Not Subject to § 1983 Liability

Plaintiff's claims against Defendant Parole Board fail because this Defendant is not subject to liability in a § 1983 suit. "The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit."); Stevens, 864 F.2d at 115 (Eleventh Amendment bars suit against GDOC); Bailey v. Silberman, 226 F. App'x 922, 924 (11th Cir. 2007) (*per curiam*) ("Neither a State nor its agencies may be sued as a named defendant in federal court absent the State's consent."); Goodman v. Kemp, No. CV 622-075, 2023 WL 2065663, at *4-5 (S.D. Ga. Jan. 26, 2023) (dismissing Georgia Board of Pardons and Paroles as a defendant because it was not subject to liability in § 1983 lawsuit), *adopted by* 2023 WL 2060737 (S.D. Ga. Feb. 16, 2023).

Because the State of Georgia has sovereign immunity against Plaintiff's § 1983 claims, and Defendant Parole Board is an agency of the state, it should be dismissed from this case.

### 3. Plaintiff Fails to State a Constitutional Claim Regarding His Denial of Parole Against Defendant Moon and Any Other Individual Parole Board Members Contemplated in the Reference to "Parole Board 5 Members"

Plaintiff alleges Due Process Clause, Ex Post Facto Clause, Equal Protection Clause, and retaliation claims based on his November 19, 2024, denial of parole. (See doc. no. 1, pp. 11, 13, 18.) However, for the reasons described below, he fails to state a claim for these

5

constitutional violations. In his "Motion to Add Claims" against Defendant Moon and notice titled "Violation of the Parole Board," Plaintiff claims the Parole Board's November 19th decision is void because only three members participated. (Doc. nos. 4, 5.) Because Plaintiff has a right to amend once as a matter of course, the Motion to Add Claims should be **DENIED** as **MOOT**. (Doc. no. 4.) However, rather than require Plaintiff to submit an amended complaint that includes all his claims in one pleading, the Court considers the new allegations in the instant screening for the sake of efficiency.

### a. Due Process Clause Violation

Plaintiff fails to state a Due Process Clause violation because he has not established a constitutionally protected liberty or property interest. To state a Due Process Clause claim, "a plaintiff must establish three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Cir. 2018) (*per curiam*) (citing Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)). Plaintiff clearly establishes state action; thus, the Court turns to the remaining two elements.

As to the first element "a state parole system creates a liberty interest in parole that is subject to the protections of the Due Process Clause only when it establishes a legitimate expectation of parole," but the Eleventh Circuit has ruled "Georgia's parole system does not create a legitimate expectation of parole." Porter v. Ray, 461 F.3d 1315, 1322-23 (11thCir. 2006). Thus, in Georgia, there exists no liberty interest in parole, and Plaintiff, therefore, fails to state a Due Process claim relating to the alleged procedural defects in his parole decision including his allegation that only three parole board members participated in the vote to deny him parole.

Nonetheless, even without a liberty interest in parole, a prisoner can establish a Due Process Clause violation when the prisoner can show the parole board relied on false information. See Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991) ("[B]y relying on the false information in [the prisoner's] file, the Board has exceeded its authority under [the Alabama statute] and treated [the prisoner] arbitrarily and capriciously in violation of due process." (citation omitted)). Plaintiff contends the parole board relied on false information provided by the victims' family members and friends, the Warden of Wilcox State Prison, and the Rockdale County District Attorney in reaching the decision to deny him parole. (Doc. no. 1, pp. 11-12.) In support, Plaintiff alleges (1) the warden of Wilcox State Prison said in October 2023 he would recommend denial of parole in retaliation for Plaintiff filing grievances and lawsuits against prison officials; and (2) an unspecified comment by the Rockdale County District Attorney. (See id.)

Plaintiff fails to state a claim because he does not specify what false information, if any, the warden provided to the Parole Board, and he does not describe the district attorney's comments at all. See Jones v. Ray, 279 F.3d 944, 946 (11th Cir. 2001) ("While we have held that the use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim." (citing Monroe, 932 F.2d at 1442 (11th Cir. 1991)). Completely left unsupported, therefore, is the generic claim that the Parole Board relied on false information, and for this reason Plaintiff fails to state a claim.

      b.     **Ex Post Facto Clause Violation**

Plaintiff also alleges the retroactive application of a new Georgia policy to his parole decision violated the Ex Post Facto Clause. (Id. at 13.) To establish an Ex Post Facto Clause

7

violation, "(1) the law must be retrospective, meaning it applies to events occurring before its enactment; and (2) the offender must be disadvantaged by it." United States v. Abraham, 386 F.3d 1033, 1037 (11th Cir. 2004) (citations omitted). As to the second element, "a plaintiff must show that, 'as applied to his own sentence[,] the law created a significant risk of increasing his punishment.'" Randolph v. Ward, No. 2:22-cv-637, 2024 WL 1266212, at *3 (M.D. Ala. Feb. 21, 2024) (citing Garner, 529 U.S. at 255), *adopted by* 2024 WL 1261261 (M.D. Ala. Mar. 25, 2024). In the parole context, "[a]n amendment that does not 'modify the statutory punishment imposed for any particular offenses,' 'alter the standards for determining either the initial date for parole eligibility or an inmate's suitability for parole,' or otherwise 'change the basic structure of [the prior] parole law' does not satisfy this standard." Id. (citing Garner, 529 U.S. at 250 (citations omitted)).

Here, Plaintiff does not establish an Ex Post Facto Clause violation because he fails to show the "new" parole eligibility law was actually applied to him. In 2006, the statutory requirement "change[d] pertaining to serious violent felonies that determine parole eligibility for a life sentenced offender." See The Parole Process in Georgia, State Board of Pardons and Paroles, https://pap.georgia.gov/parole-consideration/parole-process-georgia (last visited October 3, 2025). Such offenders who committed crimes between 1995 and before July 1, 2006 are eligible for parole after serving fourteen years of their sentence, while offenders who committed crimes on or after July 1, 2006 are eligible for parole after serving thirty years of their sentence (the "new law"). (Id.)

Plaintiff is correct that based on his crime commission date of 2004, his parole eligibility is calculated under the law for crimes committed between 1995 and before July 1, 2006, meaning he became eligible for parole after serving fourteen years. See id. Publicly

8

available records reveal Plaintiff first began to serve his sentence of incarceration on June 9, 2006. See https://gdc.georgia.gov; Select Offender Search, Find an Offender; Search Now; I agree; Search "Merilein, Jean"; Submit Form; Scroll to "STATE OF GEORGIA – INCARCERATION HISTORY" (last visited October 3, 2025). Had the "new law" been applied to him, the Parole Board would not have reviewed Plaintiff's parole application until June 9, 2036. But Plaintiff avers the Parole Board reviewed Plaintiff's case and denied him parole on November 19, 2024, which is eighteen years after he began serving his sentence. (See doc. no. 1, pp. 37-38.) Accordingly, it is clear the "new law" was not applied to his case because his initial parole determination occurred well before the thirty-year eligibility minimum.

Moreover, Plaintiff is eligible for reconsideration of parole after his initial denial "at least every eight years[,]" meaning Plaintiff could have his parole considered *twice* before the thirty-year mark. See Ga. Comp. R. & Regs., Rule 475-3-.05(2) (2025); see also Garner v. Jones, 529 U.S. 244, 247 (2000) (explaining the Georgia Parole Board amended its Rules in 1985 to provide offenders serving life sentences are eligible for reconsideration of parole denials at least every eight years). Therefore, Plaintiff does not establish an Ex Post Facto Clause violation because the facts demonstrate the thirty-year minimum before consideration of parole required by the "new" law was not applied to his case.

### c. Equal Protection Clause Violation

"To establish an equal protection claim, a prisoner must demonstrate (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); see also Elston v. Talladega Cnty. Bd. of

9

Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring plaintiff to demonstrate challenged action was motivated by intent to discriminate in order to establish equal protection violation). A "class of one" exists where a plaintiff has been intentionally treated differently from others similarly situated without justification. Thorne v. Chairperson Fla. Parole Comm'n, 427 F App'x 765, 771 (11th Cir. 2011) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "To be 'similarly situated,' the comparators must be prima facie identical in all relevant respects." Id. (internal quotations omitted) (quoting Grider v. City of Auburn, Ala., 618 F.3d 1240, 1264 (11th Cir. 2010)). Furthermore, a plaintiff must "describe the comparator's characteristics 'that would be relevant to an objectively reasonable governmental decisionmaker'" in detail. Alvarez v. Sec'y Fla. Dep't of Corr., 646 F. App'x 858, 863-64 (11th Cir. 2016) (quoting Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007)).

Plaintiff does not establish an equal protection claim against Defendant Moon based on her consideration of Plaintiff's parole. Plaintiff alleges Defendants Moon and the Parole Board racially discriminated against him by denying his parole without "provid[ing] him with an interview prior to [their] decision." (Doc. no. 1, p. 23.) While Plaintiff alleges these Defendants provided "black Americans, Asians, L[a]tinos, and white prisoners with an 'interview'" before determining their parole status, and that Defendant Moon denied him the same treatment, he does not allege any facts to suggest his comparators were similarly situated. (Id.) Indeed, he makes no mention of their underlying convictions, the amount of their sentences they have served, or any other trait that shows they are situated similarly to Plaintiff. (Id.) Accordingly, Plaintiff does not establish he was treated differently from other similarly situated individuals and fails to state an equal protection claim.

### d. Retaliation Claim

To prevail on a retaliation claim, Plaintiff must establish: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation and quotation marks omitted). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "[t]o establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008) (*per curiam*).

First, to the extent Plaintiff brings a retaliation claim against Warden Mims, this claim fails because Warden Mims is not a named Defendant. (See doc. no. 1.) Plaintiff's retaliation claim also fails because he inadequately alleges causation. Indeed, beyond his own conclusory assertions that he was denied parole because he filed various lawsuits and grievances, he fails to provide any supporting factual detail to establish that any named Defendant engaged in any conduct constituting retaliation. (See doc. no. 1.) Rather, Plaintiff's retaliation allegations are vague and conclusory, and thus, he fails to allege a valid claim for retaliation that is plausible on its face.

### 4. Plaintiff Fails to State a Constitutional Claim Regarding His Drug Test Disciplinary Report

Plaintiff alleges Due Process Clause, Equal Protection Clause, and retaliation claims based on his December 23, 2024, disciplinary report ("Disciplinary Report"). (See doc. no. 1, pp. 21-22, 24-29.) However, for the reasons described below, he fails to state a claim for these constitutional violations.

#### a. Due Process Clause Violation

Plaintiff fails to state a claim for violation of either procedural or substantive due process rights against Defendants Harner, Foster, and McFarlane based on their involvement with Plaintiff's Disciplinary Report. Prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no liberty interest in transfer to less agreeable prison). However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in punitive segregation: the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 486 (1995).

The Court first turns to the "atypical and significant hardship" prong. Thus, the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-00453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by*, 2017 WL 343638 (M.D. Ga. Jan. 23, 2017). To meet this pleading requirement, Plaintiff "must state or allege

*facts* to show an 'atypical and significant hardship.'" Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015). Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief. See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff has not provided any information about the typical conditions at TSP, let alone alleged how the sanctions imposed by the Disciplinary Report (including temporary restrictions upon telephone use, visitation, packages, and store privileges) pose an "atypical and significant hardship" on him. See Watkins v. Humphrey, Nos. 5:12-CV-97 and 5:12-CV-118, 2014 WL 6998102, at *1-2 (M.D. Ga. Dec. 10, 2014) (dismissing due process claim where the plaintiff failed to provide facts comparing his conditions of confinement differed from those in the general population). Accordingly, Plaintiff fails to state a claim against Defendants Harner, Foster, and McFarlane based on the imposition of an atypical or significant hardship.

Next, Plaintiff alleges the Disciplinary Report will extend the length of his incarceration because it will prejudice future Parole Board decisions. (Doc. no. 1, p. 29.) The allegation is mere speculation. Furthermore, in Georgia, there exists no liberty interest in parole except when the prisoner can show the parole board relied on false information in reaching the decision to deny parole. See discussion *supra* Section I.B.3.a. Plaintiff cannot show a *future* Parole Board will rely on the Disciplinary Report. Accordingly, this claim is conclusory and does not entitle Plaintiff to relief. See Jones v. Ray, 279 F.3d 944, 946 (11th Cir. 2001) ("While we have held that the use of false information in a parole file can be a due process violation,

prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim." (citing Monroe, 932 F.2d at 1442 (11th Cir.1991)).

### b. Equal Protection Claim

Plaintiff does not establish an equal protection claim against Defendants Harner, Foster, and McFarlane based on their involvement with Plaintiff's Disciplinary Report. Plaintiff alleges Defendants Harner, Foster, and McFarlane discriminated against him by finding him guilty of a disciplinary infraction, and sanctioning him accordingly, because of his nationality. (Doc. no. 1, pp. 26-27.) Plaintiff alleges that, in contrast, Defendants "immediately dismissed and cancelled the charges and disciplinary report" against inmate Sallette, who is American, despite a positive drug screen. Plaintiff fails to show he was similarly situated with Sallette because Plaintiff faced disciplinary action for refusing to take a drug test, not submitting to a test that was positive, and he offers no details to support his conclusory remark that Defendants acted out of animosity for his nationality. (See id. at 27-29.) Accordingly, Plaintiff fails to state an equal protection claim. See discussion *supra* Section I.B.3.c.

### c. Retaliation Claim

Furthermore, Plaintiff does not establish a retaliation claim against Defendants Harner, Foster, and McFarlane based on their involvement with Plaintiff's Disciplinary Report. First, to the extent Plaintiff brings a retaliation claim against Warden Mims, this claim fails because Warden Mims is not a named Defendant. (See id. at 24.) Second, to the extent he brings a claim against the Parole Board, this claim fails because, as described above, this state agency is not subject to liability in a § 1983 lawsuit. See discussion *supra* Section I.B.2. Finally, Plaintiff's retaliation claims against Defendants Harner, Macfarlane, and Foster also fail because Plaintiff inadequately alleges causation. Indeed, merely alleges he was issued a drug

test under "the instructions of Wilcox State Prison's Warden Charles Mims, who gave these [D]efendants a bad report about [Plaintiff,]" Plaintiff fails to provide any supporting factual detail to establish that any named Defendant engaged in any conduct constituting retaliation. (See doc. no. 1.)

### 5. Any Potential State Law Claims Should be Dismissed

To the extent Plaintiff may have any viable state law claims concerning his parole or Disciplinary Report,[2] those should be dismissed without prejudice so that Plaintiff may pursue them, if he so chooses, in state court. Federal district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." Id. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . . We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

---

[2] For example, Plaintiff's complaint alleges Defendant prison officials slandered and defamed him by writing a "false" and "malicious" disciplinary report. (See e.g., doc. no. 1, p. 26.)

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, the Court has determined the complaint fails to state a claim that could serve as the basis for original federal court jurisdiction. Thus, without any federal claims, the Court concludes any potential state law claims should be dismissed without prejudice. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well. . . . [I]t usually should do so without prejudice as to refiling in state court.").

### 6. **Plaintiff's Official Capacity Monetary Claims**

Plaintiff sues Defendants in both their individual and official capacities. (Doc. no. 1, p. 1.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendants for monetary relief fail as a matter of law.

## II. CONCLUSION

Because Plaintiff fails to state a federal claim upon which relief may be granted, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** without prejudice, and Plaintiff's Motion to Add Claims be **DENIED** as **MOOT**. (Doc. no. 4.) The

Court further **REPORTS** and **RECOMMENDS** any potential state law claims be **DISMISSED** without prejudice, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3rd day of October, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA